# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUTH ANN NOVAK, | : | No. 3:17cv963 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
|     v. | : | |
| | : | (Magistrate Judge Carlson) |
| NANCY A. BERRYHILL, | : | |
| ACTING COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
|     Defendant | : | |

## **MEMORANDUM**

Before the court is Magistrate Judge Martin C. Carlson's report and recommendation ("R&R") suggesting that the court deny plaintiff's social security appeal. Plaintiff Ruth Ann Novak (hereinafter "plaintiff" or "claimant") filed the appeal asserting error in the Commissioner's denial of her applications for disability insurance benefits under Title II (hereinafter "DIB") and for Title XVI supplemental security income. Plaintiff filed objections to the R&R, which are now ripe for disposition. After a careful review, and for the reasons that follow, we decline to adopt the R&R. Instead, we will remand the case to the Commissioner for an award of benefits.

## Background

On February 19, 2014, plaintiff protectively filed her initial application, a Title II application for a period of disability and DIB and an initial Title XVI

application for supplemental security income, claiming disability as of March 1, 2013. ((Doc. 12-2, admin. rec. docs related to admin process (hereinafter "R") at 23). Plaintiff alleges she is disabled due to fibromyalgia, COPD,[1] neuropathy, hypertension, anxiety, and depression. (R. at 9 (letr. dated April 13, 2016 from plaintiff's treating physician, Michaelene Torbik, D.O., opining that "[d]ue to numerous medical conditions [plaintiff] is unable to work in any capacity.")).

Plaintiff further alleges she is disabled due to "ongoing emotional issues, including bipolar disorder, in addition to anxiety, and depression." (R. at 12 (ltr. dated March 17, 2016 from plaintiff's treating psychiatrist, Satish Mallik, M.D., opining that "[plaintiff] is on medication, but continues to struggle with her overall symptomology. [Plaintiff] is compliant with her treatment and follow-up. Given the level of emotional distress, [plaintiff] is not able to be employed at this time.")). To treat these conditions plaintiff takes the following medications: Lyrica, Cymbalta, Paxil, Valium, Clonidine, Seroquel, Doxepin, and high blood pressure medication. (R. at 28).

Her claims were denied on April 25, 2014. Plaintiff then requested a hearing before an Administrative Law Judge (hereinafter "ALJ"). (R. at 22). The ALJ held the hearing on November 12, 2015. (R. at 38). On November 19, 2015 the ALJ found that plaintiff is not disabled, and denied her disability insurance

---

[1] The ALJ noted that plaintiff is a current every day smoker, smoking up to 20 cigarettes per day. (R. at 29).

benefits under sections 216(i) and 223(d) of the Social Security Act. (R. at 33). Based upon his finding that she is not disabled, the ALJ also denied her application for supplemental security income under section 1614(a)(3)(A) of the Social Security Act. (Id.) Plaintiff requested review by the appeals council on December 8, 2015. The appeals council denied her request for review on April 6, 2017. (Id. at 1). Plaintiff timely filed her complaint in this court on June 2, 2017. (Doc. 1). The Clerk of Court assigned the case to Magistrate Judge Carlson for an issuance of an R&R.

As noted above, Magistrate Judge Carlson issued his R&R on April 27, 2018, recommending the ALJ's decision should be affirmed and the plaintiff's appeal denied. (Doc. 18). Plaintiff filed objections on May 11, 2018. (Doc. 19). On May 29, 2018, the Commissioner waived the opportunity to respond to plaintiff's objections to the R&R, (Doc. 20), thus bringing the case to its current posture.

**Jurisdiction**

The court has federal question jurisdiction over this Social Security Administration appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this

3

title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .")).

**Standard of review**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

In reviewing a Social Security appeal, this court must determine whether "substantial evidence" supports the ALJ's decision. See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v.

Apfel, 186 F.3d 422, 427 (3d Cir. 1999). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). The Third Circuit Court of Appeals has explained that "substantial evidence has been defined as 'more than a mere scintilla'; it means such relevant evidence as a reasonable mind might accept as adequate.'" Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating courts may not weigh the evidence or substitute its own conclusion for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Discussion**

To receive disability benefits, the plaintiff must demonstrate an "*inability to engage in any substantial gainful activity* by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not

only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates disability insurance claims with a five-step sequential analysis.  20 C.F.R. §§ 404.1520(a)(4).  This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity; (2) has an impairment, or combination of impairments, that is severe; (3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment"; (4) has the "residual functional capacity" to return to his or her past work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(I)-(v). Prior to addressing step four, the ALJ must determine the claimant's residual functional capacity (hereinafter "RFC").  20 C.F.R. §§ 404.1520(a)(4)(iv).  A plaintiff's RFC is "the most [the plaintiff] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  If the claimant has the RFC to do his or her past relevant work, the claimant is not disabled.

The ALJ first concluded that plaintiff meets the insured status requirements of the Social Security Act through March 31, 2013 (R. at 25).  Then he applied the five-step sequential analysis and found the following:  Step 1- plaintiff has not engaged in substantial gainful activity since March 1, 2013, the alleged onset

7

date, Id.; and Step 2- plaintiff has the following severe impairments: chronic obstructive pulmonary disease (COPD), neuropathy, fibromyalgia, anxiety, and depression. Id. The ALJ found that plaintiff's impairments cause more than minimal limitations on her ability to perform basic work related activities and are therefore severe. Id.

At Step 3, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404 Subpart P, Appendix 1 (20 C.F.R. §§ 1520(d), 404.1525 and 404.1526)). (R. at 25). After considering all the listings, the ALJ found that, "Although . . . the claimant is afflicted with severe impairments, the salient facts and competent medical evidence in this case reveals [sic] that the claimant does not have an impairment, or combination of impairments, severe enough to meet or equal the requirements of the listed impairments." Id.

In analyzing Step 4, the ALJ concluded that the severity of plaintiff's mental impairments considered by themselves, and in combination, fail to meet or medically equal criteria listings 12.04 and 12.06.[2] Id. Plaintiff similarly failed to satisfy the "paragraph B" criteria, under which mental impairments are disabling if they "result in at least two of the following: marked restriction of activities of daily

---

[2] Listing 12.04 pertains to depressive, bipolar, and related disorders. Listing 12.06 pertains to anxiety and obsessive compulsive disorders.

living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." Id.

The ALJ determined that notwithstanding her impairments, the ALJ determined plaintiff has the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she could lift and carry 10 pounds occasionally, 2 to 3 pounds frequently. The claimant could stand/walk for no more than 2 hours cumulatively in 8 hours. She could sit for 6 hours in an 8-hour day. The claimant could use both hands continuously but must avoid hazards such as unprotected heights and moving machinery. She must not climb ladders, ropes or scaffolds and must avoid exposure to temperature extremes, humidity and heavy concentrations of dust, fumes, odors and gases. The claimant is limited to simple, routine tasks involving simple work decisions. She must avoid dealing directly with the public or work as a team member. She could have occasional contact with coworkers, supervisors and the public.

(R.at 27).

Based upon the RFC the ALJ found that the plaintiff could not return to her past relevant work as a counter waitress. (R. at 31). At Step 5, the ALJ concluded that the plaintiff has the RFC to perform sedentary work. (R. at 27). A vocational expert testified at the hearing, that jobs exist in the national economy

for someone with plaintiff's RFC, age, education and work experience.[3] (R. at 32). These jobs include inspector, ticket counter, and assembly worker. (Id.) Thus, the ALJ concluded found concluded that the plaintiff is not disabled. (Id.)

Magistrate Judge Carlson concluded that the ALJ's decision is supported by substantial evidence. Plaintiff objects to this conclusion. Plaintiff's objection centers on the ALJ's analysis of the medical evidence, specifically, the fact that he did not give great weight to plaintiff's treating physician. She asserts that "[t]he ALJ failed to provide adequate reasons for totally rejecting the physical function assessment provided by plaintiff's lifetime treating physician Dr. Torbik."[4] (Doc. 19 at 1).

The ALJ summarized Dr. Torbik's opinions, and noted that she had completed a "Residual Functional Capacity Assessment" on May 28, 2014. (R. at 29). The ALJ indicates that:

> [Dr. Torbik] listed diagnoses of hypertension, chronic obstructive pulmonary disease, fibromyalgia, anxiety and depression. Her symptoms include chronic pain, confusion, depression, anxiety, fatigue and an unstable gait. Side effects of her medications include severe vertigo, weakness, fatigue, poor concentration and

---

[3] Plaintiff was born on February 14, 1970. (R. at 10). She was over 45 years of age at the hearing before the ALJ on November 12, 2015, and therefore a "younger person in terms of vocational purposes" (Doc. 12-2 at 57) and she had ten (10) years of education. (Id.)

[4] Plaintiff testified that she generally saw Dr. Torbik every 3 (three) or 4 (four) months, sometimes a little longer. Plaintiff, however, can always call her and go see her. She has known Dr. Torbik for fifteen years. (R. at 53).

>memory loss. The claimant could sit for 20 minutes and stand/walk for 10 minutes at a time, up to less than one hour in an 8-hour day. She will need unscheduled breaks frequently during the day. The claimant could lift and carry less than 10 pounds occasionally but never more than 10 pounds. She is limited in reaching, handling and fingering due to shoulder and neck pain with severely decreased range of motion.

(R. at 29).

Ultimately, Dr. Torbik opined that the claimant was incapable of working eight hours a day, five days per week. (Id.) Dr. Torbik completed a second residual functional capacity ("RFC") assessment approximately five months later on September 23, 2014. In this assessment, Dr. Torbik's "diagnoses remained the same as in the previous residual functional capacity. The only difference between the RFC completed on May 28, 2014 and the [second] RFC was that the claimant could sit for 15 to 20 minutes and could stand/walk for 10 minutes." (Id.) The ALJ's conclusion with regard to Dr. Tobik's opinion is that "she found that the claimant could essentially do nothing." (R. 30). Plaintiff's treating psychiatrist also found that she is unable to work.

Instead of providing great weight to the opinion of Dr. Torbik, the plaintiff's longtime treating physician, the ALJ rejected her findings. The ALJ reasoned that Dr. Torbik relied "heavily on the claimant's reported symptoms but the objective medical findings do not support that level of impairment. Exhibit B4F reflects good muscle strength and neurological findings. An EMG was normal

11

and an MRI showed only mild to moderate stenosis but no actual cord or nerve root impingement. The claimant's own testimony shows a greater ability to function." (R. at 30).

In her appeal, the plaintiff challenges the ALJ's decision to provide no weight to the opinion of her treating physician. Magistrate Judge Carlson noted that Dr. Torbik had treated the plaintiff for several years. (Doc. 18, R&R at 3). The R&R notes that Torbik documented plaintiff's medical complaints, but "the treatment records . . . often recorded fairly benign and unremarkable clinical findings." (Id.) The R&R cites not to a specific medical record for this finding but to the entirety of Dr. Torbik's medical records.

Based upon this analysis, and despite the years-long treatment of the plaintiff, and the conclusions of Dr. Torbik regarding plaintiff's ability to engage in activity, the ALJ and magistrate judge chose to credit an examining medical source, Dr. Jay Willner, who performed a consultative examination of plaintiff. He did not treat the plaintiff and only examined her once. His findings "stood in stark contrast to the opinions expressed by Dr. Torbik." (Id. at 4). Instead of crediting the physician who had treated plaintiff over a course of years, the ALJ and R&R suggest that the doctor who provided the most compelling conclusions was in fact the doctor who examined her only once.

The law provides that we should accord treating physicians' reports great and possibly controlling weight.[5] Specifically, the Third Circuit Court of Appeals has explained:

> Treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Rocco v. Heckler, 826 F.2d 1350 (3d Cir. 1987); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record.) An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985).

Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

The Third Circuit has further explained the importance of treating physicians' opinions as follows:

> Under applicable regulations and the law of [the Third Circuit], opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight. . . . The regulations explain that more weight is given to a claimant's treating physician because these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from

---

[5] With regard to evaluating opinion evidence, we apply the rules in effect at the time of the ALJ's decision, that is section 404.1527 and the caselaw developed around the rules.

13

>reports of individual examinations, such as consultative examinations or brief hospitalizations.

Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001).

"In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (internal quotation marks omitted).

In the instant case, the ALJ did not properly apply the treating physician's opinion, and thus the ALJ's decision is not supported by substantial evidence. Here, the reasoning provided indicated that the treating physician often recorded fairly benign and unremarkable clinical findings, and yet she reached the conclusion that plaintiff had severe limitations anyway. Because of the "fairly benign and unremarkable clinical findings", the ALJ and magistrate judge rejected the treating physician's opinion and rather credited the non-treating doctor who had examined plaintiff once. We find this reasoning flawed.

Objective medical tests would not be expected to be able to confirm many of the ailments from which the plaintiff suffers such as fibromyalgia, anxiety and depression. Anxiety and depression are mental ailments. "Fibromyalgia is a disease involving muscle and musculoskeletan pain, accompanied by stiffness

14

and fatigue due in part to sleep disturbances." Perl v. Barnhart, No. 03-4580, 2005 WL 579879 at *3 (E.D. Pa. March 10, 2005). "[T]here are no objective tests which can conclusively confirm the disease; rather, it is a process of diagnosis by exclusion and testing of certain focal tender points on the body for acute tenderness which is characteristic in fibrositis patients." Id. (internal quotation marks and citation omitted). "Accordingly, because objective tests may not be able to verify a diagnosis of fibromyalgia, the reports of treating physicians, as well as the testimony of the claimant, become even more important in the calculus for making a disability determination." Id. Here, the ALJ discounted the diagnosis of the longtime treating physician because she relied on plaintiff's reported symptoms as opposed to objective medical tests. This was an error. The nature of plaintiff's physical malady does not lend itself to objective medical tests. Accordingly, the ALJ's decision is not supported by substantial evidence.

Furthermore, in rejecting the treating doctors' opinions, the magistrate judge relies upon the plaintiff's Global Assessment of Functioning ("GAF").[6] He

---

[6] The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 3 – 32 (4th ed. 1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id. The score is useful in planning treatment and predicting outcomes. Id. A GAF score of 31-40 represents some impairment in reality testing or communication or

concluded that the GAF scores were "routinely …found to be in a range of 55-58, were emblematic of only a moderate level of impairment, and did not support the opinion that [plaintiff] was completely incapable of working." (Doc. 18, R&R at 28). We do not find this analysis to be convincing. The law provides that "[a] GAF score does not have a direct correlation to the severity requirements of the Social Security mental disorder listings." Pounds v. Astrue, 772 F. Supp. 2d 713, 723 (W.D. Pa. 2011) (see also Gilroy v. Astrue, 351 Fed. Appx. 714, 715 (3d Cir. 2009) (citing 66 Fed. Reg. 50764-5 (2000)).

Moreover, the latest edition of the Diagnostic and Statistical Manual of Mental Disorders, the authoritative guide to the diagnosis of mental disorders, recommends that discontinuation of the GAF scoring scale. It explains that the GAF score has a conceptual lack of clarity and "questionable psychometrics in routine practice." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (FIFTH) at 16.

Thus, the GAF scores do not provide substantial evidence on which the ALJ could have relied in coming to his conclusion that the treating psychiatrist

---

major impairment in several areas, such as work or school, family relations, judgment thinking or mood. Id. A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id. A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id.

and the treating physician were wrong in their conclusions that plaintiff could not perform gainful work activity.

**Conclusion**

For the reasons set forth above, we find that the ALJ's decision was not supported by substantial evidence. The treating physicians' opinions were not provided the appropriate weight. Accordingly, we will sustain the plaintiff's objection to the report and recommendation and not adopt the report and recommendation. We will remand the matter to the Commissioner for the award of disability insurance benefits under Title II and supplemental security income under Title XVI. An appropriate order follows.

**BY THE COURT:**

**Date: November 9, 2018**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**